NORMAN WEAVER V. PHŒBE VAN AKIN ET AL.[1]

*Trusts—Power to incumber estates—Equitable mortgage—Foreclosure —Equity.*

A testatrix devised a farm in trust, to be conveyed by the trustee to a mother and daughter when the daughter reached full age, and after the discharge of such dues as should then be against her estate. The trustee accepted the trust, and was appointed executor of the will, but never settled the estate, nor rendered any account to the probate court, nor conveyed the farm to the beneficiaries. While yet a minor the daughter quitclaimed her interest in the farm to her mother, who, after her daughter became of age, at the request of the trustee, and on his repre-. sentation that the money was needed to pay off the claims of certain heirs upon the land, executed a mortgage on the farm to secure a loan for that alleged purpose, the trustee representing to the mortgagee that the mother was then the sole owner of the mortgaged premises.

This was done with the knowledge and acquiescence of the daughter, to whom the mother soon after reconveyed the inter- est deeded to her, and the next day conveyed to the daughter her own interest, subject to the mortgage, which the daughter assumed and agreed to pay. The mortgage was foreclosed by advertisement, and the land bid in by the mortgagee, and was not redeemed from such sale.

A party claiming through the mortgagee filed a bill to have the mortgage declared to be in effect one made by the daughter and her mother and the trustee, and to foreclose it as such, and to hold all three for any deficiency arising on a sale under such foreclosure decree. A general demurrer was interposed, which was sustained by the court on the hearing below, and on appeal in the Supreme Court, for reasons stated in the opin- ion, to which reference is had.

Appeal from Lenawee. (Watts, J.) Argued June 6, 1888. Decided June 22, 1888.

Bill filed for purposes stated in head-note. Complain- ant appeals. Decree affirmed. The facts are stated in the opinion.

---

[1] See 43 N. W. Rep. 1081, for a second report of this case.

*W. A. Underwood (A. Howell,* of counsel*),* for complainant.

*A. L. Millard* and *John Whitbeck,* for defendants.

[The points of counsel are stated in the opinion.—
REPORTER.]

SHERWOOD, C. J.    The bill of complaint in this case
is filed to obtain a decree to declare a mortgage made by
defendant Caroline Weaver, wife of the complainant, to
Elihu L. Clark, to be in effect a mortgage made by all
the defendants, and to foreclose it as such, and to make
all the defendants liable for any deficiency that may arise
after a sale of the mortgaged premises to pay the mort-
gage debt.

The property was originally owned by Paulina Fish, and
known as the "Hudson Farm." Before she died, she
devised and bequeathed all of her estate to the defendant
Edwin Hadley, in trust for the following purposes:

1. To pay debts and funeral expenses.
2. To attend to and manage the affairs and interests of
the estate during the trusteeship.
3. To receive and apply, during his trusteeship, the rents
and profits of the Hudson farm, or so much thereof as
should be required for that purpose, to the support of her
sister, Betsy A. Vining.
4. To raise and advance, from any part of the estate,
the necessary sums to relieve the wants and necessities of
Caroline Hertzler and Phœbe Fish (nieces of the testatrix),
and to invest any balance remaining until said Phœbe
(who is the daughter of said Caroline) should become of
age.
5. And when said Phœbe should become twenty-one,
and after the discharge of such just dues as should then
be against the estate, to convey all, with said Hudson
farm, to said Caroline and Phœbe, in equal shares.

Upon the death of the testatrix, in 1872, the will was
probated, and the administration of the estate was com-

mitted to said Hadley, who entered at once upon the execution of his trusts as such administrator, and as trustee under the will; but no debts were ever proved against the estate of said Paulina, nor is it known that there were any. After probate of the will, and prior to the time when said Phœbe became of age, Hadley paid a considerable amount out of the estate to said Phœbe and Caroline, and also paid a considerable amount of the rents received by him from said farm to said Betsy A. during · her lifetime; but he never settled said estate in the probate court, nor did he ever report to said court any of his proceedings in the administration of the estate, nor render any account, as trustee under said will, to any one, nor has he made any settlement of said trusts, but the same remain open and unsettled; and he has never conveyed the‧ legal title to said farm to said Caroline and Phœbe, or either of them, or to any other person.

May 11, 1875, said Phœbe, while yet a minor, but in contemplation of marriage, made a voluntary conveyance of her interest in said Hudson farm to said Caroline, her mother, and in October, 1875, Phœbe attained her majority. November 24, 1875, Hadley represented to Caroline and Phœbe that it was necessary to raise $2,250 by mortgage upon said farm, to pay off the claims of certain heirs upon the land; and they, believing such loan and mortgage to be necessary for that purpose, consented thereto. Said Hadley then borrowed the money of one Clark, to be secured by Caroline's mortgage on the farm, upon his representation to Clark that, by said will and the deed from Phœbe, the said Caroline was then the sole owner of the premises; and thereupon, for the purpose of securing said loan, the said Caroline, on November 24, 1875, by the procurement of said Hadley, and with the full knowledge and concurrence of said Phœbe, gave her note and a mortgage for $2,250 upon said farm to said Clark, the execution of

which mortgage by said Caroline was in the presence of said Phœbe and said Hadley, who were the subscribing witnesses thereto, and the same was delivered by Hadley to Clark.

February 2, 1877, Caroline reconveyed to Phœbe, by quitclaim deed, the undivided half of the farm previously conveyed by Phœbe to her, and on February 3, 1877, sold and conveyed her own undivided half of the farm to said Phœbe, subject to said mortgage to Clark, which mortgage the said Phœbe, in the agreement of purchase and in and by the deed of conveyance to her, assumed and agreed to pay.

December, 1879, the said mortgage being wholly unpaid, a foreclosure thereof by advertisement was commenced by Clark, and on March 13, 1880, the farm was purchased by and conveyed to said Clark, upon the foreclosure sale, for $3,409.71. April 29, 1880, Clark died; and by his will, which was duly proved, his interest in said mortgaged premises, and in said note and mortgage, were vested in his widow, Isabella T. Clark. The farm was never redeemed from said sale, nor has said mortgage ever been paid or discharged, except through said foreclosure. Complainant has purchased, and by quitclaim deeds of May 3 and November 9, 1881, has received a conveyance, from Mrs. Clark, of all the interest acquired by her husband, Clark, under said mortgage in said farm.

Said Phœbe has been in possession of the whole of said premises ever since the execution to her of said deed of February 3, 1877, and still keeps and retains the same, and refuses to pay the said debt secured by said mortgage to said Clark; and, because of her infancy at the time of the execution of her deed of May 11, 1875, denies that it conveyed any interest in said farm to said Caroline; denies that the mortgage to Clark covered any more than Caroline's half of the farm; and denies that complainant has acquired any title to said farm by virtue of said

deeds from Mrs. Isabella T. Clark, or any interest in said mortgage, or the debt secured thereby.

The theory of the case set up in the bill is that the will of Paulina Fish vested in Hadley an absolute legal title in fee-simple to the Hudson farm, and at the same time vested the equitable title in the nieces, Caroline and Phœbe ; that the legal title to the land still remains in Hadley, for the reasons—

1. That the trusts of the will have not been closed.

2. That the legal estate has never passed from him in the manner provided by the will,—that is, by a deed of conveyance.

3. That the legal estate vested in him was such that it could be divested by him only by a conveyance in writing.

That Phœbe's deed of May 11, 1875, conveyed her equitable interest in the farm to Caroline, and, when Caroline executed the mortgage to Clark, she held the equitable title to the whole, while the legal title to the land remained vested in Hadley, hence, as to her, it was an equitable mortgage merely; that it was an equitable mortgage on the part of Hadley, because he assented to it, procured it to be executed, delivered it, represented to Clark that Caroline was the owner of the land, and had the right to make it, procured the loan of money upon it, and intended it as a security for the loan; that, if Phœbe then had any interest in the farm, it was an equitable mortgage on her part, because she assented to it, and assisted in its execution by witnessing it, and thereby held out to Clark that Caroline was the owner of the farm, and had the right to mortgage it; that, being an equitable mortgage merely, it could be foreclosed only in chancery, and Clark's attempted foreclosure at law was ineffectual to bar the equity of redemption; but his statutory foreclosure and purchase at the sale, and the subsequent deed of the farm to complainant, operated as an assign-

ment of the debt and equitable mortgage to him, with all
of Clark's rights to foreclose the same, and that he has
a right to bring this bill for that purpose.

Such are the material averments of the bill, and the
theory upon which complainant relies for relief. The
defendant Phœbe Van Akin interposed a general demurrer.
The other defendants did not appear. On the hearing
at the circuit, Judge Watts sustained the demurrer, and
dismissed complainant's bill.

It is the contention of the complainant that, at the time
of the execution of the mortgage, Hadley had the legal title
to the premises, and that the equitable title was in the
mortgagor, Caroline, or in her and Phœbe; and it is further
contended by complainant that Hadley having negotiated
the loan and procured the execution of the mortgage, and
represented to Clark, the mortgagee, that Caroline held
the entire title, he is estopped from denying its validity;
and that Phœbe, having assented to the making of said
loan and mortgage, and having subscribed the mortgage
as a witness, is also estopped from denying its validity; and
that Phœbe and Caroline should in this suit be held as joint
makers of the mortgage.

We do not think this position can be maintained. They
were the *cestuis que trustent;* and, as such, they, nor either
of them, had any title, either legal or equitable. The
whole estate, both legal and equitable, is vested in the
trustee, under our statute. The person for whose benefit
the trust is created takes no estate or interest in the land,
but may enforce the trust. How. Stat. § 5578; *Noyes v.
Blakeman,* 6 N. Y. 567. The *cestui que trust* possesses no
power, and has no right, to charge the trust property with
anything. Neither can the trustee himself do so, unless
expressly authorized by the statute, and then the charges
must be strictly confined to the objects for which the

authority was given.   *L'Amoureux v. Van Rensselaer*, 1 Barb. Ch. 34.

This mortgage was not made to carry into effect any of the purposes of the trusts contained in the will, nor is there any fraud charged in the bill against Caroline or Phœbe; neither is there any claim that either of them received any benefit from the loan for which the mortgage was given; and Hadley's act in giving the mortgage was absolutely void by the terms of the statute, under the circumstances.   See How. Stat. § 5583.   It therefore appears that neither of the defendants had any power, under the will, to make the mortgage.   Hadley certainly had none, and the only interest Caroline and Phœbe had was the right to enforce the trust; and this they could not assign, dispose of, or incumber.   *Noyes v. Blakeman, supra; Learned v. Tallmadge*, 26 Barb. 443; *Gott v. Cook*, 7 Paige, 521.

At the time this mortgage was made, the trust had not been fully executed, and the legal title, therefore, remained in the trustee, as did the equitable, under the statute. It is only when a party has a title, legal or equitable, in fact or of record, that he can give a valid mortgage upon land; and it not being shown that either Caroline or Phœbe had either at the time the mortgage in suit was given, and that the mortgagee and his assignee had such notice as the law requires of the actual situation of the title at the time, and of the fact that the trust of Hadley was not yet executed, it is difficult to see how the complainant can maintain his bill or how, under all the circumstances, Phœbe can be estopped from making the defense she now interposes.

The mortgage given by Caroline being void, no promise to pay it by Phœbe can give it validity.   Neither can it create an equity in favor of the mortgagee or his assignee, requiring her to pay it.   The complainant's whole theory is based upon the assumption that Caroline and Phœbe

had the equitable title and interest in the property; and, such not being the case, the argument of the learned counsel for complainant, based thereon, necessarily fails.

It is quite manifest that Phœbe cannot be held to have ratified the deed of another, of lands, which she herself could not have made, by signing such deed as a witness, even though she consented to the making of the same; and her assumption of the payment of such mortgage in the deed she received from Caroline subsequently could not bind her if such deed were void. And this is the most she did, upon which the estoppel is claimed.

There is no view which we have been able to take of the case that will sustain the complainant's bill. The decree sustaining the demurrer must be affirmed, with costs.

LONG, J., concurred with SHERWOOD, C. J.

CAMPBELL, J. I am not prepared to say that, after Phœbe came of age, she and her mother had not interests in the land which they could convey. But her mother's interest—whatever its character may have been—was purely equitable; and the mortgagee, who dealt with the trustee, could be in no better position than the trustee himself, in dealings which inured to the advantage of the trustee. The mortgagee had no right to advance money to the trustee at the expense of the beneficiary. If he wished to deal with the beneficiary for her own account, he was bound to see that she got the money, and was bound to know that fiduciary relations prevented the trustee from getting benefits at the expense of the *cestui que trust.* Had the mortgage been valid as an equitable charge, I doubt whether it would have been capable of statutory foreclosure, as there could be no legal power of sale. The doctrine that an irregular statutory foreclosure passes the mortgage to the purchaser is based on the idea that there

was a mortgage capable of such foreclosure. I concur in holding that complainant has no case.

CHAMPLIN, J., concurred with CAMPBELL, J.

MORSE, J. I concur in the result.